UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**ALEXANDER MALDONADO, JR.**                                              **PLAINTIFF**

**v.**                                      **CIVIL ACTION NO. 3:24-CV-P574-CRS**

**TIMOTHY GORDON et al.**                                           **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alexander Maldonado, Jr., a prisoner proceeding *pro se*, initiated this 42 U.S.C. § 1983 action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, this action will be dismissed.

**I. STATEMENT OF CLAIMS**

Plaintiff, a prisoner at the Kentucky State Reformatory (KSR) initiated this lawsuit by filing a complaint (DN 1) suing Timothy Gordon, KSR Grievance Coordinator; Lt. Steven Crawford; Adjustment Hearing Officer Steve Howard; Ombudsman Allyson Lambert; Phillip Campbell, Deputy Warden; Sgt. Te Smith; Captains Jesus Gonzalez and Randy Orway; Lt. Jordan Keister; Major Travis St. Clair; Warden Anna Valentine; John/Jane Doe; and Kelly McQuillins. He sues them in their official and individual capacities.

Plaintiff's original complaint (DN 1) brings ten claims: 1) Crawford retaliated against him; 2) Gonzalez and Keister "failed" their supervisory duties by partaking in a conspiracy; 3) Crawford discriminated against him, humiliated him, and participated in the conspiracy against him; 4) Howard violated his due process rights; 5) Smith stated that he was reading Plaintiff's mail to "decipher[] codes to see if there's a hidden message"; 6) Gordon conspired to violate his grievance rights related to two grievances Plaintiff wrote on Smith and Crawford; 7) Gordon rejected another

grievance on July 7, 2024; 8) supervisory liability; 9) Lambert did not provide a favorable response when Plaintiff notified her of a rejected grievance; and 10) conspiracy under 42 U.S.C. § 1985(3).

Plaintiff requests compensatory and punitive damages and injunctive relief in the form of restoring good time credit, expungement, and the resignation of the officers who took part in the alleged conspiracy.

The Court consolidated another case filed by Plaintiff with this one because it was a really a continuation of this case (DN 12). In that complaint (DN 13), Plaintiff brings six additional claims: 11) Gordon retaliated against him on October 7, 2024, when he threatened to throw out his next grievance without reading it; 12) Valentine allowed Howard to contravene a state statute requiring that he be trained for 18 hours before sitting on the court-call committee; 13) Plaintiff grieved Gordon's statement that he would throw out his next grievance without reading it; 14a) Gordon retaliated against him on October 9, 2024, by requesting he rewrite his grievance and then did not file the grievance and threatened to have him "locked" to dissuade him from writing a second grievance; 14b) Gordon wrote Plaintiff up "frivolously" knowing he had a parole eligibility hearing soon; 15) Plaintiff told non-Defendant Spicer that Howard did not have the proper training, and she responded, "'You know your s**t'";[1] 16) Gordon deemed a grievance that Plaintiff filed to be non-grievable in violation of § 1985(3).

Plaintiff again requests compensatory and punitive damages and injunctive relief in the form of restoring good time credit and expungement.

Plaintiff filed an amended complaint (DN 9) to add Lt. Kelly McQuillins as a Defendant and claims from October 12, 2024, numbered 17-20: 17) Smith failed to protect him and sexually assaulted him; 18) Gonzalez downplayed his description of the alleged sexual assault; 19) Gordon

---

[1] Plaintiff adds, "By the way administration has put a hit on me in the past." The Court does not consider this to be a claim in this case. It is phrased as an aside, it is not numbered as his other claims are, and he offers no particulars.

had grievances thrown out; and 20) Gordon denied him access to the courts by refusing to print out attachments for a motion in another civil case before this Court, and Plaintiff tried to hand him a grievance about Smith's sexual assault. In addition to compensatory and punitive damages, he requests the restoration of "all good time taken by Steve Howard to KYDOC inmates."

Plaintiff filed a motion (DN 10) seeking to add claim 21 against John Doe having to do with speaking to Doe on October 18, 2024 to check his "clear time" for his upcoming parole consideration.

Plaintiff filed a second amended complaint (DN 14) in which he states that he "escaped the 10th of Nov." and since then has been housed in the Correctional Psychiatric Treatment Unit (CPTU). He states that since being placed in the CPTU, his requests for grievance forms and a grievance aide have been ignored and that several guards, including Te Smith, have defamed him by calling him a rat and/or snitch. He states that Smith told inmates to watch what they said around or in front of Plaintiff because Plaintiff was a "rat" and a "snitch" because he had filed a Prison Rape Elimination Act [PREA] report on him. He asks the Court to consider this a defamation-of-character claim "for his comments which not only ruin me and my street credibility but also endanger my life and my family's as well." Plaintiff states that he "corrected [Smith] that a rat and a snitch cooperates in criminal investigations and convictions something which I have never done or will do." He again asks for compensatory and punitive damages, as well as Smith's "involuntary resignation and forfeiture of all benefits and future employment consideration."

Because the claims Plaintiff seeks to add in DNs 9, 10, and 14 postdate those in the complaint, the Court construes them to be motions to supplement. *See* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental

pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."). Upon consideration,

**IT IS ORDERED** that the motions to supplement DNs 9, 10, and 14 are **GRANTED**.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Official-capacity claims

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). A state, its agencies, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff's official-capacity will be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-capacity claims

#### *1. Retaliation*

In claim 1, Plaintiff alleges that on June 24, 2024, he grieved an incident in which Crawford broke a prison regulation by cursing at Plaintiff. On the same day Gordon deemed the grievance nongrievable because of a disciplinary report dated five days later against Plaintiff. According to Plaintiff, on June 29, 2024, Smith apparently filed a report on Plaintiff from an incident on June 20, 2024, when Smith did not allow Plaintiff "out of the gate to go eat" and "I inquired if maybe his decision to not allow me to get my dinner was in fact due to his ongoing friendship with his co-worker or due to my race since he allowed a african american inmate to get his dinner."

To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

The filing of a nonfrivolous grievance against a prison official is protected conduct. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). However, the Court finds that Plaintiff's grievance against Crawford for cursing him was frivolous. *See. e.g.*, *Matthews v. Bleil*, No. 2:21-CV-13017, 2024 WL 3976896, at *6–7 (E.D. Mich. July 19, 2024) (guard's "isolated use of an expletive in directing Good to exit the dayroom was unprofessional but not abusive, and therefore Good's complaint about this incident was frivolous."), *report and recommendation adopted*, 2024 WL 3974675 (E.D. Mich. Aug. 28, 2024); *Lunn v. Graham*, No. 2:23-CV-10378, 2024 WL 2060872, at *4 (E.D. Mich. Apr. 1, 2024) ("Lunn's complaint regarding Graham's direction for him to mind his business . . . amounted to nothing more than verbal abuse[.] . . . Thus, . . . the act of filing the grievance does not qualify as protected conduct."), *report and recommendation adopted*, 2024 WL 2060119 (E.D. Mich. May 8, 2024); *Scott v. Kilchermann*, 230 F.3d 1359, at *2 (6th Cir. 2000) (finding a grievance frivolous where the inmate complained that he had been subject to verbal abuse).

Further, the Sixth Circuit has identified adverse actions as those "that result in more restrictions and fewer privileges for prisoners." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010). Gordon's act of deeming a grievance to be non-grievable was not adverse; it neither resulted in more restrictions – only that grievance was deemed non-grievable – or fewer privileges for Plaintiff. And nothing suggests that having a grievance deemed to be non-grievable would deter a person of ordinary firmness from filing grievances in the future. In fact, Plaintiff clearly was not deterred from filing grievances against Crawford. In claim 3, Plaintiff states that he filed a grievance about Crawford two months later. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005) (per curiam) (affirming dismissal of retaliation claim where the plaintiff admitted in his complaint that he attempted to file grievances during the time of the defendants'

6

alleged retaliatory conduct in putting him on modified grievance access status); *see also Gordon v. Mohr*, No. 3:14 CV 2105, 2015 WL 4275547, at *5 (N.D. Ohio July 14, 2015) ("The plaintiff's complaint on its face indicates he was not deterred from engaging in protected conduct as he clearly alleges he continued to file many institutional grievances (non-frivolous or otherwise) during and after the alleged retaliatory conduct of defendants May and Morris.").

According to the allegations in claim 9, on April 9, 2024, after a grievance was rejected as non-grievable, Plaintiff states that he forwarded it to Lambert who responded, "'Regret I cannot provide a more favorable response.'" Plaintiff opines, "I feel like a more favorable response would be to respect the civil and constitutional rights of all . . . The staff has targeted me and retaliated in several forms utilizing the system and retaliating non-stop[.]" He fails to state a retaliation claim on these conclusory allegations.

In claim 11, Plaintiff alleges that on October 7, 2024, Gordon informed him he would throw out Plaintiff's next grievance "prior to printing or reading it, (Retaliation)." In claim 14a, Plaintiff alleges Gordon retaliated against him by not filing his grievance and by writing him up. He also states that Gordon threatened to have him "locked to shy me away from composing my second grievance when he said 'I could have you locked.'" It appears that the grievance he was required to rewrite was one he had written the day before that Gordon said he would throw out without reading. Plaintiff states in claim 15 that he "plans to confront Gordon on his actions which violate [state law]."

These allegations of retaliation also fail to state a claim. Gordon's alleged threat to throw out his next grievance did not deter Plaintiff from filing a grievance, and it appears that Gordon afforded him an opportunity to rewrite it. Similarly, Gordon's alleged threat, "'I could have you

7

locked,'" did not deter Plaintiff who states, "on the record I plan to confront him on his actions[.]'" Accordingly, the Court will dismiss Plaintiff's retaliation claims.

### *2. Supervisory liability*

Plaintiff's filings allege that various Defendants violated his rights based on the doctrine of supervisory liability, including in claims 2, 8, and 19. Claim 2 alleges that Gonzalez and Keister "failed their supervisory duties by partaking in the civil rights conspiracy by signing off on actions which violated my redress of grievances." (Cleaned up). In claim 8, Plaintiff asks that a "supervisory liability claim be applied against all Defendants, for they all have rank and duties that they chose to neglect." This claim refers specifically to Valentine, Campbell, St. Clair, Lambert, Gonzalez, Orway, and Keister. Claim 19 claims "Supervisor liability is for 6/14 grievances" that Valentine rejected and Gordon found nongrievable.

To establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Nowhere does Plaintiff allege encouragement or actual involvement of a supervisor so as to establish supervisory

liability. Plaintiff's claims based on supervisory liability must be dismissed for failure to state a claim.

### 3. Alleged discrimination by Crawford

In claim 3, Plaintiff alleges that on August 24, 2024, Crawford discriminatorily singled him out by making him show the inside of his mouth three times while he was in the pill line and threatened to lock him up if he did not separate his top and bottom lips even though Plaintiff was only taking Tylenol. According to Plaintiff, Crawford also publicly humiliated him by calling him "Boy," which Plaintiff explains is a name used for slaves in the South and for a homosexual man in prison, neither of which, Plaintiff pointed out to Crawford, applies to him.

"The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011). Plaintiff does not identify a fundamental right, and he does not allege that he is a member of a suspect class. Simply being a prisoner is not a suspect class. *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000).

To state an equal protection claim in a class-of-one case, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see also United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)).

Plaintiff's discrimination claim is wholly conclusory. He offers no particulars as to whether other inmates were also required to show their mouths. Furthermore, it is not clear from the complaint that Crawford knew the nature of the medicine Plaintiff was taking, *i.e.*, Tylenol instead of a controlled substance. Regardless, Plaintiff does not identify any reason, and the Court sees none, that ensuring each prisoner takes his and only his medication is not rational, given the important security and safety concerns in prison.

Additionally, to the extent that Plaintiff is actually bringing a retaliation claim because, as he states, Crawford's actions took place two days after he was served papers in another civil suit brought by Plaintiff, that claim fails as well. Having to show his mouth during pill call and being called "Boy" one time are not sufficiently adverse actions that would deter a person of ordinary firmness from engaging in that conduct. *Thaddeus-X*, 175 F.3d at 394.

As to Plaintiff's allegation that he was humiliated when Crawford called him "Boy," Crawford's alleged use of harassing or degrading language does not state a § 1983 claim. Such language by a prison official, although unprofessional, simply does not amount to a constitutional tort. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding harassing language is not cruel and unusual punishment in violation of the Eighth Amendment); *Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). The Court will dismiss claim 3 for failure to state a claim.

### *4. Due process*

In claim 4, Plaintiff alleges that Howard, an adjustment hearing officer, has violated his due process rights, "often misusing his authority and position to retaliate against me for listing him in a previous civil action." He states that Howard has ignored broken chains of custody, "fails to

test substances assumed to be drugs or contraband," "failed to provide my accusers or accept affidavits from inmates that would impact or favor an inmate's outcome at a court call hearing," and has had no training to be an adjustment hearing officer. He states that St. Clair wrote him on April 25, 2024, that "no further action [was] necessary," apparently in response to Plaintiff's grievance complaining about Howard. Plaintiff does not link any of these allegations to a particular hearing against him.

Plaintiff further alleges in claim 15 that when he told non-Defendant Spicer that Howard did not have the proper training, she responded, "'You know your s\*\*t'" thereby indicating that Howard has violated the due process rights "of almost every inmate in this facility."

To comply with the requirements of the Due Process Clause, a prison official need only provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least twenty-four hours prior to any hearing; (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). These protections are required only when a liberty interest is at stake. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 484, 486–87 (1995). "A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (quoting *Sandin*, 515 U.S. at 484).

Here, the complaint fails to allege that the punishment Plaintiff received after the hearing(s) which this claim pertains to imposed an atypical and significant hardship sufficient to violate due process. *See Sandin*, 515 U.S. 472, 484-86. However, because elsewhere Plaintiff states that he

has lost good-time credit, the Court will assume for purposes of this review, that Plaintiff did have a liberty interest.

Recognizing broken chains of custody, testing substances, and having no training to be an adjustment hearing officer are not constitutional requirements in a prison hearing. It is not entirely clear what Plaintiff means by alleging that Howard "failed to provide my accusers or accept affidavits from inmates." But Plaintiff does not allege that providing his "accusers" or accepting inmates' affidavits would not have been unduly hazardous to institutional safety or correctional goals. Accordingly, the Court will dismiss this claim for failure to state a claim.

### 5. Mail

In claim 5, Plaintiff alleges that Smith admitted to reading his legal mail to decipher "codes to see if there's a hidden message." According to Plaintiff, when he reported this, Smith's superior stated that Smith would be retrained, and the error would be looked into.

Plaintiff's allegation of a single error in handling his mail fails to state a § 1983 claim. *See, e.g.*, *Morgan v. Montanye*, 516 F.2d 1367, 1370-71 (2d Cir. 1975) (finding no cause of action for damages under § 1983 for a single instance of interference with prisoner's legal mail); *Brown v. Kasich*, No. 4:16CV2284, 2017 WL 769958, at *4 (N.D. Ohio Feb. 28, 2017) ("[A] random or isolated incident of inadvertent mail interference does not state a claim that rises to the level of constitutional magnitude, and is therefore not actionable under § 1983."); *Banks v. Hiland*, No. 5:12-CV-P197-R, 2013 WL 1679362, at *8 (W.D. Ky. Apr. 17, 2013) (same). This claim will be dismissed.

### *6. Grievances*

Plaintiff makes a number of allegations related to not being allowed to file a grievance or the denial of his grievances throughout his filings, including in claims 4, 6, 7, 9, 13, 14, 16, and 20.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. Oct. 30, 2003) ("[T]here is no inherent constitutional right to an effective grievance procedure[.]") (citing cases). For this reason, the failure to follow grievance procedure or the denial of a grievance fails to state a claim under § 1983. *Gibbs v. Laughhunn*, No 16-1771, 2017 WL 3140577 at *2 (6th Cir. Feb. 2, 2017); *see also LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective grievance procedure"). The Court will dismiss Plaintiff's grievance claims for failure to state a claim upon which relief may be granted.

### *7. Conspiracy under § 1985(3)*

In claim 10, Plaintiff alleges that he is victim of a § 1985(3) conspiracy resulting in the deprivation of good-time credits, jobs, and deprivation of his rights. In claim 16, he alleges that Gordon misused the discipline write-up system to throw out grievances in violation of § 1985(3).

In order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must prove: (1) a conspiracy; (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the law; and (3) an act in furtherance of that conspiracy; (4) that causes injury to

person or property, or a deprivation of a right or privilege of a United States citizen. *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003). The conspiracy must be motivated by racial or other protected class-based animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993).

Plaintiff does not allege the existence of a conspiracy motivated by class or other protected class-based animus, and thus fails to state a § 1985(3) claim. *See Taylor v. Brighton Corp.*, 616 F.2d 256, 267 (6th Cir. 1980) ("Since the appellants' complaint does not allege that the conspirators were motivated by class-based animus, it does not state a claim actionable under § 1985(3).").

Additionally, Plaintiff cannot bring a claim for lost good-time credit in this case. A challenge to the fact or duration of confinement must be brought as a petition for habeas corpus and is not the proper subject of a civil-rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Thus, the Court will also dismiss this claim for failure to state a claim upon which relief may be granted.

### *8. Violation of state law*

In claim 12, Plaintiff states that he wishes to bring a claim against Valentine for allowing Howard to violate state law requiring him to be trained for 18 hours before he can sit in on the court call committee. He states that Valentine is aware that Howard was not trained.

As stated above, Plaintiff fails to state a claim simply because Valentine is a supervisor who knew of a subordinates' actions. "[S]imple awareness of employees' misconduct does not lead to supervisor liability." *Leary*, 349 F.3d at 903.

Furthermore, violation of a state law is not a constitutional tort. *Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003) ("The statute [§ 1983] is . . . limited

14

to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law.") (citation omitted); *Williams v. Van Buren Twp.*, 925 F. Supp. 1231, 1237 (E.D. Mich. 1996) ("Obviously, 42 U.S.C. § 1983 does not provide a cause of action against a state official for a violation of state law."). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Thus, claim 12 fails to state a claim upon which relief may be granted.

### 9. Parole eligibility

In claim 14, Plaintiff alleges that on October 10, 2024, Gordon wrote him up "frivolously" knowing he had a parole eligibility hearing soon. Plaintiff protests that despite the fact that parole is a privilege he has a "right to not be lied about to that parole board with false allegations in a write up they would see."

"[T]o obtain a constitutionally protected liberty interest in parole, [a prisoner] must have a 'legitimate claim of entitlement to' parole, a claim that can be created only by the operation of state law*." Bartley v. Adams*, No. 19-5067, 2020 WL 371446, at *1 (6th Cir. Jan. 7, 2020) (quoting *Crump v. Lafler*, 657 F.3d 393, 397 (6th Cir. 2011)). As Plaintiff recognizes, "Under Kentucky law, 'parole is not a right but a privilege.'" *Id*. (quoting *Stewart v. Commonwealth*, 153 S.W.3d 789, 793 (Ky. 2005)). Thus, because Plaintiff does not have a protected liberty interest in being released on parole, Plaintiff fails to state a due process claim against Gordon. *See, e.g.*, *McCain v. Jackson*, No. 1:19-cv-234, 2019 WL 2075959, at *5 (S.D. Ohio May 10, 2019) ("To the extent that plaintiff alleges that the allegedly false conduct report may affect his parole eligibility, plaintiff's claim fails because he does not have a constitutionally protected liberty interest in being released on parole."), *report and recommendation adopted*, No. 1:19-CV-234, 2019 WL 6485692 (S.D. Ohio Dec. 3, 2019).

Further, a prisoner does not have a due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999)); *Newton v. Chaney*, No. 3:24-CV-P386-JHM, 2024 WL 3858503, at *2 (W.D. Ky. Aug. 15, 2024) ("Plaintiff's claims based upon falsified incident reports fail to state a claim upon which relief may be granted.") (collecting cases). Thus, Plaintiff does not state a claim for relief under § 1983 for the alleged false disciplinary report's possible future effect on his parole eligibility. *See Lee-Bryant v. Sindles*, No. 2:08-CV-121, 2009 WL 528959, at *4 (W.D. Mich. Mar. 2, 2009) (dismissing prisoner's claim alleging that a false misconduct conviction resulted in a 24-month continuance of his parole request for failure to state a claim). Plaintiff's claims will be dismissed for failure to state a claim.

### *10. Smith failed to protect and sexually assaulted him*

In claim 17, Plaintiff alleges that on October 12, 2024, between 4:00 and 4:20 p.m., Smith "failed to maintain security after talking with grievance aide who repeatedly threaten my life in front of [Smith]." He states that after he returned from dinner the grievance aide called him a "bitch-ass," and Plaintiff responded by calling him a "rat." According to Plaintiff, the aide then charged, and Plaintiff put his hands up and said, "'Swing first.'" The other inmate then "'copped-out.'"

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, including directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial

16

risk that the defendant knew would cause the plaintiff serious harm. *Id.* at 834; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).

According to Plaintiff's own recitation of events, his being "charged" by the other inmate occurred only after Plaintiff called him a "rat." Plaintiff fails to state a failure-to-protect claim.

Plaintiff further alleges that at the 5:00 p.m. "count," Smith "shot his remarks at me." At 6:15-20 p.m., McQuillins and Smith decided to search his room. Smith searched his "bunkee" first. While searching Plaintiff, Plaintiff alleges that Smith sexually assaulted him. He offers no details, but in his next claim he states that on the same day after he requested a PREA coordinator other officers explained to him that "it's routine to rub inmates' asses (or/and also cup their balls)."

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment; this is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (punctuation modified, citations omitted). However, the Sixth Circuit has held that even incidents of sexual touching coupled with sexual remarks may not rise to the level of an Eighth Amendment violation so long as the offensive conduct was "isolated, brief, and not severe[.]" *Id.* (citation omitted); *see also Solomon v. Mich. Dep't of Corr.*, 478 F. App'x. 318, 320–321 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on prisoner's buttock in a sexual manner and made an offensive sexual remark did not state an Eighth Amendment claim).

Here, assuming that Smith made contact with Plaintiff's buttocks and testicles during the pat-down search, what Plaintiff alleges is an isolated incident with no indication that it was not

17

merely incidental to the search and unaccompanied by a sexual remark. Thus, Plaintiff also fails to state a claim based on Smith's search of him.

### *11. Claim 18*

In claim 18, Plaintiff states that on October 12, 2024, after requesting a PREA coordinator, McQuillins escorted him to the Administration Building where he saw John Kerr, who is not a Defendant, and Gonzalez. Gonzalez questioned him about his lawsuits rather than the sexual assault. He alleges, "By not being PREA coordinators and inquiring about PREA situations to only gain the time and space to interrogate me about my exercise of protecting my rights thru a civil action they enabled Te Smith," who Plaintiff labels a "sexual deviant/predator."

The Court finds Plaintiff's claim that Gonzalez "enabled" a "sexual deviant/predator" by questioning Plaintiff wholly conclusory. *See Abner v. Focus: Hope*, 93 F. App'x 792, 793 (6th Cir. 2004) (stating that the court is not "required to accept non-specific factual allegations and inferences or unwarranted legal conclusions"). His conclusions about Gonzalez's questioning are not supported by factual allegations that would "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### *12. Access to court*

In claim 20, Plaintiff alleges that Gordon denied him access to the court by twice refusing to print out attachments for a motion in another civil case in this Court. He also complains that Gordon did not file a "PREA grievance" apparently because he filed it late.

To state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). That is, there must be an actual injury, and no actual injury

occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id*. at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim").

Here, Plaintiff alleges no actual prejudice. He does not allege that the attachments he sought to copy were necessary to prevent a claim from being lost or dismissed. Regardless, this Court does not require *pro se* prisoners to file photocopied documents. Plaintiff can handwrite copies of exhibits if he is unable to photocopy them. Thus, Plaintiff fails to state an access-to-court claim.

### *13. Claim 21*

In DN 10, Plaintiff states that on October 18, 2024, he spoke with someone at the Kentucky Department of Corrections (KDOC) who informed him that if the "happenings" had not occurred he would have had over six months of "clear" time. He states that he found himself "amused" that the civil-rights conspiracy with Crawford and Howard as "kingpin and underboss" filed "frivolous write ups and unauthorized and untrained court call" in his KDOC file. He requests that all supervisors be found liable for supporting these "terrorist acts."

Plaintiff also alleges that on October 13, 2024, when McQuillins investigated the frivolous disciplinary report from October 9, he was told that his requested witness no longer worked there; yet a few days later Plaintiff learned the requested witness was still employed there. He asserts that he received a parole deferment because of four frivolous disciplinary reports.

For the reasons already explained by the Court, Plaintiff cannot state a claim for supervisory liability, for deferment of his parole, or because he was the victim of an alleged frivolous disciplinary report. This claim will be dismissed for failure to state a claim.

### *14. Defamation*

In DN 14, Plaintiff states that Smith told inmates to watch what they said around or in front of Plaintiff because Plaintiff was a "'rat'" and a "'snitch'" because he had filed a PREA report on him. Plaintiff states that he "corrected [Smith] that a rat and a snitch cooperates in criminal investigations and convictions something which I have never done or will do." He asks the Court to consider this a defamation-of-character claim.

Because Plaintiff's federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over this state-law claim. *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). This claim will be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss this action.

Date: January 17, 2025

Charles R. Simpson III, Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
4411.009